# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| DAVID G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | No. ED CV 19-00703-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

David G. ("Plaintiff") applied for Supplemental Security Income ("SSI") on August 7, 2015, alleging disability beginning June 30, 2015. See Dkt. 16, Administrative Record ("AR") 174-82.[1] Plaintiff's claim was denied initially and on reconsideration. See AR 108-12, 116-21. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 11, 2018. See AR 37-76.

On April 26, 2018, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. See AR 17-36. The ALJ followed the five-step

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. See AR 22. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, congestive heart failure, asthma, chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine with radiculopathy, chronic pain syndrome, mood disorder not otherwise specified, and learning disorder not otherwise specified. See id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 23.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with certain additional limitations. See AR 26. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. See AR 30. At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that someone with Plaintiff's RFC could perform jobs that exist in the national and local economy, including swatch clerk, bench assembler, and production assembler. See AR 31-32. Accordingly, the ALJ denied benefits. See AR 32.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II.  LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla,

but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (internal quotation marks and citations omitted).

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks omitted). Yet the court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)). The court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. at 1010.

### III. DISCUSSION

The parties dispute: (1) whether the ALJ properly considered the opinion of Dr. K. Loomis; (2) whether the ALJ properly considered the VE's testimony; and (3) whether substantial evidence supported the VE's testimony. See Dkt. 17, Joint Submission ("JS") at 4.

### A. ALJ's Consideration of Dr. Loomis's Opinion

State agency mental medical consultants reviewed Plaintiff's records at both the initial and reconsideration levels. At the initial level, Dr. K. Loomis opined that Plaintiff was "moderately limited" in his ability to interact appropriately with the general public, and "not significantly limited" in his abilities to ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. AR 87-88. In the last section of his report, Dr.

Loomis wrote "npsrts, see fofae," short for "nonpublic simple repetitive tasks, see findings of facts and analysis of evidence." AR 88. In the findings of fact, Dr. Loomis wrote that Plaintiff was "capable of understanding, remembering and carrying out simple one to two step (unskilled) tasks." AR 82.

The ALJ gave "significant weight" to the state agency consultants' opinions limiting Plaintiff to simple, repetitive tasks with limited public contact: "the limitation to simple, repetitive tasks is consistent with the claimant's low education and literacy level and the social limitation is consistent with the evidence of mood disorder." AR 30. Accordingly, the ALJ's RFC limited Plaintiff to "simple repetitive tasks." AR 26.

Plaintiff contends that the ALJ failed to account for Dr. Loomis's findings of fact and analysis of evidence, which limited Plaintiff to "one to two step (unskilled) tasks," not "simple, repetitive tasks." See JS at 6-8. According to Plaintiff, a limitation to one and two-step instructions leaves a narrower occupational base that does a limitation to simple, repetitive tasks. See id. at 7-8 (citing Rounds v. Comm'r of SSA, 807 F.3d 996, 1002-04 (9th Cir. 2015) (finding a conflict between RFC limit to "one and two step tasks" and the VE's selection of level two reasoning jobs)). Following Rounds, several district courts have reversed decisions imposing a "simple, repetitive tasks" limitations where the ALJ fails to address and distinguish conclusions by doctors that claimants can perform one-and-two step instructions. See, e.g., Wilson v. Colvin, No. 16-1971, 2017 WL 1861839, at *6 (N.D. Cal. May 9, 2017) (collecting cases).

But those decisions are not applicable here, where there is no conflict between Dr. Loomis's assessment and the ALJ's RFC. Although Dr. Loomis wrote in the findings of facts and analysis of evidence that Plaintiff was capable of "one to two step (unskilled) tasks," AR 82, he later opined that Plaintiff was capable of "[nonpublic simple repetitive tasks]," AR 88. Nothing in Dr.

4

Loomis's opinion suggests that Plaintiff was limited to, at most, one to two step tasks. To the contrary, Dr. Loomis concluded that Plaintiff was only "moderately limited" in his ability to interact with the general public and "not significantly limited" in his abilities to ask simple questions, get along with coworkers, and maintain appropriate behavior. See AR 87-88; see also McLain v. Astrue, No. 10-1108, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) (finding that moderate mental functional limitations do not preclude the performance of jobs that involve simple, repetitive tasks). Additionally, at the reconsideration level, Dr. H. Hurwitz agreed with Dr. Loomis that Plaintiff was limited to unskilled, limited public contact. See AR 98-99 ("Consider initial decision of unskilled, limited public contact to continue to be appropriate. REVIEWED/AGREED."). Given the available evidence, the ALJ rationally concluded that Dr. Loomis believed Plaintiff capable of simple, repetitive tasks. See Shaibi v. Berryhill, 883 F.3d 1102, 1107 (9th Cir. 2017) (holding that where evidence is susceptible to more than one rational interpretation, ALJ's conclusion must be upheld). Remand is accordingly not warranted on this claim of error.

**B.  ALJ's Consideration of VE Testimony**

At the hearing, the ALJ posed several hypotheticals to the VE, all of which assumed an individual "with a less than sixth grade education, and is illiterate." AR 72. The VE testified that such an individual could not perform Plaintiff's past work, but could perform some light, unskilled work, namely the representative positions of swatch clerk (DOT 222.586-050), bench assembler (DOT 706.684-022), and production assembler (DOT 706.687-010). See AR 73. The VE testified that his testimony was consistent with the DOT except for issues of absenteeism or off task time. See AR 74. The ALJ ultimately concluded that Plaintiff could perform these jobs. See AR 31-32. Plaintiff argues that the VE's testimony conflicted with the DOT, and thus did not

constitute substantial evidence upon which the ALJ could base her decision. See JS at 14-17.

"At Step Five, 'the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" Rounds, 807 F.3d at 1002 (quoting Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015)) (alterations in original). "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846.

Plaintiff asserts that the ALJ "intended obliquely" to find him illiterate. JS at 15 ("Because the ALJ asked the [VE] to assume a literacy and describe illiteracy problems in the decision, this party assumes that the ALJ intended obliquely to find [Plaintiff] not literate."). In the hearing decision, however, the ALJ found that Plaintiff had "a marginal education and is able to communicate in English." AR 31. As even Plaintiff points out, there is a difference between "illiteracy" and "marginal education" under the regulatory scheme. Compare 20 C.F.R. §§ 416.964(b)(1) ("Illiteracy means the inability to read or write."), with (b)(2) ("Marginal education means ability in reasoning arithmetic, and language skills which are needed to do simple, unskilled types of jobs."). Plaintiff does not explicitly challenge this finding.

Moving on, Plaintiff argues that the hypothetical person specified by the ALJ does not possess the reasoning and language skills in order to function as a swatch clerk, bench assembler, or production assembler. According to the DOT, these jobs require Level Two Reasoning, which means the ability to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete

variables in or from standardized situations." DOT, App. C, § III, 1991 WL 688702. Production assembler requires Level One Language, defined as: "Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute." Id. Swatch clerk and bench assembler require Level Two Language, defined as: "Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute." Id. Plaintiff contends there is an apparent conflict between a limitation of illiteracy and the demands of Level 1/2 Language and Level 2 Reasoning, which the ALJ failed to recognize and reconcile before relying on the VE's testimony.

      Plaintiff cites no legal authority for the argument that illiteracy renders a claimant unable to work in any job requiring Level 1 Language and Level 2 Reasoning. Indeed, his position (as it pertains to language) would essentially mean that illiteracy is per se disabling, which is not the law. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not per se disabled if he or she is illiterate."); see also Meza v. Astrue, No. 09-1402, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011) (rejecting argument that a non-English speaking person is per se unable to work in jobs requiring reasoning level 1); Lawson v. Apfel, 46 F. Supp. 2d 941, 947 (W.D. Mo. 1998) ("A decision holding that illiterate individuals could not perform Level 1 jobs . . . is illogical and would directly contradict the Social Security regulations.").

      In fact, substantial evidence supported the ALJ's implicit conclusion that Plaintiff could perform a job requiring Level 1 Language and Level 2 Reasoning. As the ALJ noted, consultative examiner Dr. Sohini Parikh observed that Plaintiff was able to focus and follow simple oral and written instructions. See AR 24 (citing AR 453). And although he was unable to complete the written test, Plaintiff was able to pass his driver's license test via oral examination and could drive as needed. See AR 49. Plaintiff also reported that he could pay bills, count change, and handle a savings account. See AR

229. Although it would have been preferable to have a more fully developed record of Plaintiff's reasoning and language abilities and a more specific finding in the ALJ's opinion, Plaintiff points to no evidence in the record showing that he could not perform at these basic levels.

Additionally, although "an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT," Shaibi, 883 F.3d at 1109, a conflict is apparent only if the challenged vocational requirement is "essential, integral, or expected" for the job, Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). Plaintiff asserts that he cannot write an inventory list or carry out instructions furnished in a written format. See JS at 14-15. Even if true, the narrative job description for the production assembler job indicates that writing lists and carrying out written instructions are not "essential, integral, or expected." See DOT 706.687-010, 1991 WL 679074 ("Performs repetitive bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves."). It appears that Plaintiff could get by given his ability to understand and follow (even complex) oral instructions. See Ruiz v. Berryhill, 732 F. App'x 592, 594 (9th Cir. 2018) (no need to investigate and resolve conflict where claimant's limited English language abilities were not essential, integral, or expected for the job of sewing machine operator).

Accordingly, the ALJ did not err in finding that Plaintiff could perform the job of production assembler. As such, any error in the determination that Plaintiff could perform the jobs of swatch clerk and bench assembler was harmless. See Mitchell v. Colvin, 584 F. App'x 309, 312 (9th Cir. 2014) (finding that erroneous identification of job constituted harmless error where ALJ identified another that existed in significant numbers). Remand is not warranted on this claim of error.

## C. VE Testimony

Finally, Plaintiff attacks the reliability of the VE's testimony. He contends that the VE's job numbers testimony conflicts with three non-DOT sources, the Occupational Outlook Handbook ("OOH"), Job Browser Pro ("JBP"), and Occupational Information Network ("O*NET") data. See JS at 26-27.[2]

As noted above, when there is an apparent conflict between the VE's testimony and the DOT, the ALJ is required to reconcile the inconsistency. See Massachi, 486 F.3d at 1153-54. The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. Id. However, the ALJ's obligation to resolve conflicts between VE testimony and the DOT does not extend to non-DOT sources like the OOH:

> [W]e can find no case, regulation, or statute suggesting that an ALJ must sua sponte take administrative notice of economic data in the . . . OOH. It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency. But Shaibi cites to no authority suggesting the same is true for the . . . OOH. Our precedent holds, instead, that an ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire sua sponte into the foundation for the expert's opinion.

---

[2] Plaintiff first raised this issue to the Appeals Council. See AR 293-351.

Shaibi, 883 F.3d at 1109-10. Likewise, courts in this circuit have consistently found that an ALJ is under no obligation to resolve a conflict between VE testimony and JBP or O*NET data. See, e.g., Seaberry v. Berryhill, No. 16-2310, 2018 WL 1425985, at *6 (C.D. Cal. Mar. 22, 2018) (collecting cases).

In any event, the ALJ's duty extends only to obvious or apparent conflicts, meaning that "the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." Gutierrez, 844 F.3d at 808. That is not the case here. Instead, Plaintiff intertwines data from various non-DOT sources and simply concludes that a conflict exists. For example, with respect to swatch clerk, Plaintiff cites DOL statistics of "weighers and measurers," then refers to O*NET data, pivots to job numbers from the OOH, then finally uses JBP numbers to conclude that there are only 166 swatch clerks in the nation. See JS at 22-23. Plaintiff's subjective lay assessment of the data is insufficient to undermine the VE's analysis. See Kirby v. Berryhill, No. 18-497, 2018 WL 4927107, at *4-5 (C.D. Cal. Oct. 10, 2018).

The VE properly relied on his professional expertise and testified that there were 26,000 swatch clerk jobs, 45,000 bench assembler jobs, and 48,000 production assembler jobs. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number). Accordingly, the ALJ's decision is thus supported by substantial evidence. And remand is not warranted on this final claim of error.

///
///
///
///
///
///
///

## IV. CONCLUSION

The decision of the Social Security Commissioner is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: March 11, 2020

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge